# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| FAROUK SYSTEMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 4:15-cv-00465 |
| | ) | |
| AG GLOBAL PRODUCTS, LLC d/b/a/ | ) | |
| FHI HEAT, LLC and SHAUKY | ) | |
| GULAMANI, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS AG GLOBAL PRODUCTS, LLC AND SHAUKY GULAMANI'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

In accordance with Rule 56 of the Federal Rules of Civil Procedure, Defendants

AG Global Products, LLC ("AG Global") and Shauky Gulamani ("Gulamani") files this,

its First Motion for Summary Judgment, against Plaintiff Farouk Systems, Inc.

("Plaintiff").

Defendants' Motion is supported by the Declarations of Matthew Seror, Jason

Dodo and Bruce Isaacson, and the Request for Judicial Notice, filed in the concurrently

filed Appendix in support of this Motion.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF PROCEEDINGS .......................................... 1

II.   STATEMENT OF ISSUES ................................................................ 1

III.  SUMMARY OF ARGUMENT ........................................................... 2

IV.  FACTUAL BACKGROUND ............................................................. 4

     A.    THE PARTIES ..................................................................... 4

     B.    PLAINTIFF'S PRODUCTS THAT CONTAIN ITS TRADE DRESS ........ 4

     C.    DEFENDANTS' ALLEGEDLY INFRINGING PRODUCT ..................... 5

     D.    PRIOR LITIGATION BETWEEN PLAINTIFF AND FHI HEAT, INC. ........................................................................... 6

     E.    AG GLOBAL'S PURCHASE OF ASSETS FROM KEY BANK .............. 6

     F.    PLAINTIFF'S COPYRIGHTED IMAGES ..................................... 7

V.   LEGAL STANDARD ..................................................................... 10

VI.  ARGUMENT ................................................................................ 11

     A.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TRADE DRESS INFRINGEMENT CLAIM .................... 11

          1.    Plaintiff's Purported Trade Dress is Generic and its Usage Inconsistent ................................................................. 11

          2.    Plaintiff Cannot Establish Secondary Meaning in its Purported Trade Dress ................................................................. 13

               i.     Plaintiff's Length and Manner of Use ............................ 15

               ii.    Volume of Sales and Plaintiff's Advertising Efforts ...... 15

               iii.   Consumer –Survey Evidence .......................................... 16

               iv.   Defendant's Intent to Copy Trade Dress ........................ 17

          3.    Even if Otherwise Protectable, Plaintiff Cannot Establish a

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Likelihood of Confusion Between its Trade Dress and
Defendant's Stylus Product ................................................................ 17

B.   AG GLOBAL IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S BREACH OF CONTRACT CLAIM ................................. 20

1.   AG Global is Not a Successor to FHI Heat, Inc. ............................ 21

2.   AG Global Has Not Infringed Plaintiff's Trade Dress Rights ......... 21

3.   The Settlement Agreement Actually Operates to Release AG
Global From the Alleged Trade Dress Infringement ....................... 21

C.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S COPYRIGHT CLAIMS .................................................. 22

1.   Subject Image No. 1 ........................................................................ 23

2.   Subject Image No. 2 ........................................................................ 24

3.   Gulamani Photograph ...................................................................... 25

VII.   CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*1-800 Contacts v. Lens.com,*
  722 F.3d 1229 (10th Cir. 2013) ................................................................... 19

*Allied Home v. Donovan,*
  830 F.Supp. 2d 223 (S.D. Tex. 2011) ........................................................... 21

*Bell v. Starbucks U.S. Brands Corp.,*
  389 F.Supp.2d 776 (S.D. Tex. 2005) ............................................................ 19

*Berg v. Symons,*
  393 F.Supp.2d 525 (S.D. Tex. 2005) ...................................................... 11, 12

*Big Island Candies, Inc. v. Cookie Corner,*
  269 F.Supp. 2d 1236 (D. Haw. 2003) ..................................................... 11, 12

*Brown v. Quiniou,*
  744 F.Supp. 463 (S.D.N.Y. 1990) ................................................................ 14

*Citizens Banking Corp. v. Citizens Financial Group, Inc.,*
  2008 W.L. 1995104 (E.D. Mich. 2008) ........................................................ 17

*Crawford v. Formosa Plastics Corp.,*
  234 F.3d 899 (5th Cir. 2000) ....................................................................... 10

*Feist Publications v. Rural Tel. Service,*
  499 U.S. 340 (1991) ..................................................................................... 22

*GTFM, Inc. v. Solid Clothing, Inc.,*
  215 F.Supp. 2d 273 (S.D.N.Y. 2002) ........................................................... 12

*Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) ............................... 10

*King v. Ames,*
  179 F.3d 370 (5th Cir. 1999) ....................................................................... 10

*Maharishi Hardy v. Abercrombie,*
  292 F.Supp. 2d 535 (S.D. N.Y. 2003) .......................................................... 12

*Motor Components, LLC v. Devon Energy,*
  338 S.W. 3d 198 (Tex.App.- Houston [14th Dist.] 2011) ............................. 21

*Nola Spice v. Haydel Ent.,*
  783 F.3d 527 (5th Cir. 2015) ....................................................................... 16

*Pebble Beach, Co. v. Tour 18 I Ltd.,*
  155 F.3d 526 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices,*
  532 U.S. 23 .................................................................................... 14, 15, 18

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Rose Art v. Swanson*,
   235 F.3d 165 (3d. Cir. 2000) ................................................................. 13

*Roselux Chemical Co. v. Parsons Ammonia Co.*,
   299 F.2d 855 (C.C.P.A. 1962) ................................................................ 17

*Sno-Wizard Mfg., Inc. v. Eisemann Products Co.*,
   791 F.2d 423 (5th Cir. 1986) ............................................................ 11, 14

*Spraying Systems Co. v. Delaven, Inc.*,
   975 F.2d 387 (7th Cir. 1992) ................................................................. 17

*Straumann Co. v. Lifecore Biomedical Inc.*,
   278 F.Supp.2d 130 (D. Mass. 2003) ..................................................... 17

*Sugar Busters, LLC v. Brennan*,
   177 F.3d 258 (5th Cir. 1999) ........................................................... 13, 15

*Sunbeam Products, Inc. v. The West Bend Company*,
   123 F.3d 246 (5th Cir. 1997) ........................................................... 14, 15

*T-Mobile US, Inc. v. AIO Wireless LLC*,
   991 F.Supp.2d 888 (S.D. Tex. 2014) ..................................................... 19

*Xtreme Lashes v. Xtended*,
   576 F.3d 221 (5th Cir. 2009) ................................................................. 18

*Zatarains v. Oak Grove*,
   698 F.2d 786 (5th Cir. 1983) ................................................................. 16

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ............................................................................ 18

17 U.S.C. § 204(a) ....................................................................................... 25

17 U.S.C. § 412 ........................................................................................... 23

17 U.S.C. § 504 ........................................................................................... 23

Fed. R. Civ. P. 56(c) ................................................................................... 10

**Other Authorities**

6 *McCarthy on Trademarks* (2016) Procedure § 32:188 ............................. 19

Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:6.50 ...... 12, 19

**Rules**

Fed. R. Civ. P. 30(b)(6) ............................................................................... 11

Fed. R. Civ. P. 56 ....................................................................................... 25

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed this action on February 19, 2015 alleging claims for trade dress infringement, breach of contract and copyright infringement. As set forth in the Court's Order of November 16, 2015, the Joint Pretrial Order is due on May 13, 2016 and the Docket Call (3:00 p.m.) is set for May 23, 2016.

## II.     STATEMENT OF ISSUES

(1)     Whether Defendants are entitled to summary judgment on Plaintiff's trade dress infringement claim as a result of Plaintiff's generic and inconsistent use of its purported trade dress, Plaintiff's inability to establish that its purported trade dress has achieved secondary meaning, and Plaintiff's inability to establish a likelihood of confusion;

(2)     Whether Defendant AG Global is entitled to summary judgment on Plaintiff's breach of contract cause of action due to Plaintiff's inability to establish that AG Global is a successor to FHI Heat, Inc. or, in the alternative, because the purported contract which serves as the basis for the claim operates as a release of Plaintiff's trade dress infringement claim;

(3)     Whether AG Global is entitled to summary judgment on Plaintiff's copyright infringement claim relating to Subject Image One and Two as a result of Plaintiff not having any rights in its claimed copyrighted work and/or that AG Global's allegedly infringing image is not substantially similar to Plaintiff's claimed original contributions to its work;

(4)     Whether defendant Gulamani is entitled to summary judgment on

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

Plaintiff's copyright infringement claim related to the Gulamani Photograph as a result of Plaintiff not having any rights in the photo and as a result of Gulamani having received a license from the author of the photo; and

(5)      Whether Plaintiff is barred from recovering statutory damages under the Copyright Act on its copyright infringement claims.

## III.   <u>SUMMARY OF ARGUMENT</u>

Plaintiff claims ownership, and the exclusive right to use, the red and black color combination in connection with hair care tools, *i.e.* hair dryers, flatirons, curling irons and hair brushes, among others.   Plaintiff asserts these broad and sweeping claims pursuant to unregistered trade dress rights, and claims that it uses its red and black color combination on its CHI line of products, including on Plaintiff's Original CHI Flat Iron (pictured below):



Plaintiff alleges that the Defendants' use of the colors red and black on its "Stylus" (pictured below) product infringes upon its rights:



Plaintiff's trade dress claim fails because the claimed trade dress is generic, and because Plaintiff has not used its purported trade dress on its products in a consistent manner.  In addition, Plaintiff's claim fails because its alleged trade dress has not achieved secondary meaning – a prerequisite to establishing trade dress rights in a product design or color.  Notably, Plaintiff has not even attempted to establish secondary meaning by way of survey evidence – widely regarded as being essential to the establishment of trade dress rights.  Plaintiff's inability to present competent survey evidence is in stark contrast to the Defendants, who commissioned a survey on secondary meaning and whose retained expert found less than 5.9% of the respondents associate the red and black color combination on hair tools with one source.  More to the point, only 1.7 of the respondents actually identified Plaintiff as that source – a clear indication that Plaintiff's red and black color combination has *not* achieved secondary meaning.

Plaintiff alternatively alleges that AG Global is liable for the trade dress infringement claim on a breach of contract and successor liability theory.  This claim stems from a settlement agreement entered into by and between Plaintiff and FHI Heat, Inc. (an entity unrelated to AG Global) that resolved a 2007 trademark infringement action.  Plaintiff's breach of contract claim fails because AG Global is not a successor to FHI Heat, Inc. and Plaintiff can produce no evidence to the contrary.   Nevertheless, even if the underlying settlement agreement *does* bind AG Global, the terms of that agreement actually *release* AG Global from the trade dress claim asserted herein.

Finally, Plaintiff alleges three claims for copyright infringement against Defendants stemming from two social media postings of AG Global and a photograph of

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

3

Defendant Gulamani.  Plaintiff has admitted that it largely took the social media postings from third party websites, and therefore Plaintiff has *de minimus* (if any) rights therein. Plaintiff also has no rights in the photograph at issue, which was taken by a third party photographer who thereafter granted a license to Gulamani for its use.

## IV.    FACTUAL BACKGROUND

### A.    THE PARTIES

Plaintiff Farouk Systems, Inc. designs and manufactures a variety of hair care products and tools, including shampoos, conditioners, and coloring products.  First Amended Complaint ("FAC"), ¶11.  Among its products, Plaintiff sells its "CHI" line of hair tools which serve as the basis for its trade dress claims alleged herein.  FAC, ¶12.

Defendant AG Global manufactures and sells hair care products and tools, and is a competitor of Plaintiff.  See Declaration of Jason Dodo, filed concurrently herewith ("Dodo Dec."), ¶2.  AG Global operates under the trade name FHI Heat. Dodo Dec., ¶3.

Defendant Gulamani is an individual and the president of AG Global. FAC,¶18. Gulamani was formerly the president of Plaintiff, having served in that capacity from May 1999 to June 2010.   Gulamani assumed his post with AG Global in November 2011, almost a year and a half after leaving the Plaintiff.

### B.    PLAINTIFF'S PRODUCTS THAT CONTAIN ITS TRADE DRESS

Plaintiff alleges that twenty-six products in its CHI line of products utilize the red and black color combination which represents its trade dress. See Exh. "1" to concurrently filed Declaration of Matthew Seror ("Seror Dec.") [Interrogatory Responses].   Plaintiff's use of its purported trade dress, as illustrated in its Original Chi

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

4

Flat Iron pictured above, includes its CHI mark in red on a black background.  Similar

uses can be found in other CHI products, including CHI Orbit; CHI Lite Dryer, CHI

Turbo Digital Spring Curling Irons; CHI Deep Waver; and CHI Touch Dryer.[1]  For other

products, the red CHI is on a silver chrome surface, as is seen on Plaintiff's CHI Pro

Dryer:



However, more recently, Plaintiff has varied its uses of the red and black color

combination, as evidenced in the following products:

<u>CHI Touch II Dryer</u>                  <u>CHI Escape Line</u>                  <u>CHI ARC</u>



## C.     <u>DEFENDANTS' ALLEGEDLY INFRINGING PRODUCT</u>

In late 2014 AG Global debuted a new product - the Stylus.  Dodo Dec., ¶3. The

Stylus is a thermal heating brush unlike any other product on the market. *Id.*  An image of

AG Global's Stylus is set forth in the Summary of Argument section above.

---

[1] Paragraph 12 of the Seror Dec. includes images of each product which Plaintiff alleges contains its trade dress.

## D.       PRIOR LITIGATION BETWEEN PLAINTIFF AND FHI HEAT, INC.

In 2007 Plaintiff filed a trademark infringement lawsuit against FHI Heat, Inc. in the United States District Court for the Southern District of Texas ("2007 Litigation"). *See* Exh. A to concurrently filed Request for Judicial Notice ("RJN").  In the 2007 Litigation, Plaintiff alleged that FHI Heat, Inc.'s use of the term "FHI" infringed on its rights in its "CHI" trademark.  FAC, ¶21.  The 2007 Litigation was settled in 2009.  FAC, ¶22.  As a result of that settlement FHI Heat, Inc. agreed to change the appearance of its FHI name so as to further distinguish it from Plaintiff's CHI mark.  This settlement was memorialized in a written settlement agreement[2], which provides, in relevant part:

> Except for claims based on breach of this Settlement Agreement, FSI[3] hereby releases FHI Heat for all claims, debts, liabilities, demand, obligations, damages, lossess, costs, expenses, attorneys' fees, action and/or causes of action which FSI has or has had against FHI Heat up to and including the date of this Settlement Agreement. The release contained in this paragraph does not extend to any conduct or omission that occurs after the date of this Settlement Agreement or is a violation of the terms of this Settlement Agreement.

It is the breach of this settlement agreement which serves as the basis for Plaintiff's breach of contract claim as alleged herein. FAC, ¶¶43-44.  The problem is, AG Global was not a party to that settlement, and is not the successor of FHI Heat, Inc.

## E.       AG GLOBAL'S PURCHASE OF ASSETS FROM KEY BANK

In or about April 2010, AG Global purchased certain asserts from Key Bank National Association.  Dodo Dec., ¶4.  Key Bank was FHI Heat, Inc.'s secured lender

---

[2] The Settlement Agreement contains a Confidentiality clause and, as a result, Defendants do not attach a full and complete copy with its Motion.  However, a full and complete copy of the Settlement Agreement was filed under seal by Plaintiff on June 18, 2015. *See* Docket No. 26.
[3] FSI is defined in the Settlement Agreement as Farouk Systems, Inc., Plaintiff herein.

and held a security interest over all of FHI Heat, Inc.'s assets. *Id.*  At some point prior to April 2010, and seemingly in response to financial difficulties, FHI Heat, Inc. surrendered all of its assets to Key Bank.  *Id.* at ¶5.  Thereafter, AG Global purchased a *portion* of those assets **from Key Bank directly**. *Id.*  Among the assets purchased from Key Bank were the FHI Heat name and the goodwill associated therewith.  *Id.*  AG Global's purchase of assets from Key Bank expressly excluded any liabilities.  *Id.*

Prior to the foregoing transaction, and since as early as 2005, FHI Heat operated as a manufacturer and seller of hair tools, and utilized a red and black color combination on its products.  *Id.* at ¶6.  Following the Key Bank transaction, and in order to maintain a consistent look with the FHI brand it had purchased from Key Bank, AG Global maintained that color scheme. *Id.*   In other words, the red and black color scheme on FHI brand products was already in use prior to the Key Bank transaction and prior to the entry of the 2009 settlement agreement.

## F.    PLAINTIFF'S COPYRIGHTED IMAGES

On or about March 1, 2013 Plaintiff posted an image to its Facebook page which contains the following unattributed quote: "A true artist wears it, walks it, and breathes it."  FAC, ¶17(1).  Thereafter, AG Global posted an image on its Facebook page (and other social media platforms) that contained the same quote.  A reproduction of Plaintiff's posting together with Defendant's allegedly infringing posting is shown here:

<u>Plaintiff's Post</u>                    <u>AG Global's Post</u>

          

Plaintiff's corporate witness admitted that the quotation included in this image was taken from a third party website and used without permission or authority. *See* Exh. 8 to Seror Dec. at pgs. 44-47 [Allison Deposition Transcript].   With respect to the additional imagery found in Subject Image 1, Plaintiff's witness admits that these images were taken as a whole from Shutterstock, a popular third party website which licenses popular clip-art images to its subscribers. *See* Exh. 8 to Seror Dec. at pgs. 35, 42 and 67-8 [Allison Deposition Transcript].  Plaintiff's witness confirmed at deposition that the image taken from Shutterstock was taken as a complete image and that other than adding the third party quote referenced above and changing the colors of the image, Plaintiff did not make any original contributions to Subject Image 1. *Id.*

In or about August 2013, Plaintiff posted a second image to its Facebook page which contains the following quote of Pablo Picasso: "Learn the rules like a pro so you can break them like an Artist."  FAC, ¶17(2).  Plaintiff does not (and cannot) claim any copyright rights in the Picasso quote or any exclusive rights therein.  Plaintiff has admitted that Plaintiff did not have the right or authority to use this quote, and simply copied from a third party website and appropriated it for its Plaintiff's use. *See* Exh. 8 to Seror Dec. at pgs. 77-8, 81 [Allison Deposition Transcript].  This is confirmed in

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff's copyright registration where the "Quoted text" is listed as "Material excluded from this claim." The only portion of the image original to the Plaintiff is the imagery of the scissors and hair on the bottom right and the "Snips of Wisdom" verbiage on the upper right of the image. *See* Exh. 3 to Seror Dec. [Copyright Registrations].

Thereafter, AG Global posted an image on its Facebook page (and other social media platforms), that contained the same quote. A reproduction of Plaintiff's posting together with Defendant's allegedly infringing posting is shown here:

<u>Plaintiff's Post</u>            <u>AG Global's Post</u>

 

Finally, Plaintiff alleges that Defendant Gulamani has infringed its rights in the Gulamani Photo by using the photo on his personal LinkedIn page:



The Gulamani Photo was taken by third party Fadil Berisha in or about 2004 when Gulamani was working at the Miss Universe pageant. *See* Exh. 5 to Seror Dec. at pgs. 110-11 [Gulamani Deposition Transcript]. Mr. Berisha was hired by the Miss Universe pageant to photograph various events, including Gulamani's hair styling sessions with the

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

9

contestants. *Id.* At one point Mr. Berisha asked Gulamani if he (Gulamani) would like his photo taken, and Gulamani agreed. *Id.* A few days later Mr. Berisha sent Gulamani the Gulamani Photo (and perhaps others) by e-mail. *Id.*

Mr. Berisha never transferred rights in the Gulamani Photo to Plaintiff and Plaintiff has admitted in response to discovery requests that it has no documents showing otherwise. *See* Exh. 2 to Seror Dec. at No. 32 [Plaintiff's Discovery Responses].

Plaintiff registered these works with the United States Copyright Office on April 21, 2015. In so doing Plaintiff represented to the Copyright Office that Plaintiff Farouk Systems, Inc. was the author of each work. *See* Exh. 3 to Seror Dec. [Registration Certificates].

## V.   <u>LEGAL STANDARD</u>

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact only exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000); *see also*, *King v. Ames*, 179 F.3d 370, 374 (5th Cir. 1999) (affirming dismissal on summary judgment of Lanham Act claim).

# VI.   ARGUMENT

## A.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TRADE DRESS INFRINGEMENT CLAIM

Plaintiff alleges that the red and black color combination[4] used on its CHI line of products constitutes protectable trade dress.  FAC ¶¶ 14 and 33.  To prove infringement of a trade dress, a plaintiff must show that: (1) the trade dress qualifies for protection; and (2) infringement has occurred.  *Sno-Wizard Mfg., Inc. v. Eisemann Products Co.*, 791 F.2d 423, 425 (5th Cir. 1986).  The first prong focuses on functionality, distinctiveness and secondary meaning. *Id*.  The second prong involves a balancing test to determine whether a likelihood of confusion exists between the claimant's purported trade dress and the allegedly infringing trade dress. *Id*.

Here, Plaintiff's trade dress claims fails for three reasons: (1) its alleged trade dress is too general and has not been employed consistently by the Plaintiff; (2) Plaintiff cannot establish that its purported trade dress has achieved secondary meaning; and (3) even if otherwise protectable, Plaintiff cannot establish a likelihood of confusion between its trade dress and Defendant's Stylus product.

### 1.   Plaintiff's Purported Trade Dress is Generic and its Usage Inconsistent

Generic trade dress is not protectable.  See *Berg v. Symons*, 393 F.Supp.2d 525 (S.D. Tex. 2005), citing *Big Island Candies, Inc. v. Cookie Corner*, 269 F.Supp. 2d 1236 (D. Haw. 2003) (dismissing trade dress infringement claim on summary judgment upon a finding that alleged trade dress was generic). The leading treatise provides the following

---

[4] Plaintiff's First Amended Complaint also referenced a red and charcoal trade dress, but two separate corporate witnesses, produced by the Plaintiff under Fed. R. Civ. Pro. 30(b)(6) testified that the only colors they are aware of as being used on Plaintiff's CHI line is red and black.

illustrations of trade dress that is too generic to be protectable:

> "(1) a design may be generic if it is defined as an overbroad or generalized theme or style of doing business that should not be the exclusive property of any one seller; (2) a design may be generic if it is such a basic or necessary format that no one should have a trade dress monopoly on it; and (3) a design may be generic if it is so common in this industry that it is incapable of serving to identify any one particular source." See 2 Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:6.50, citing to *Big Island Candies, supra.*

A claimant's use of its purported trade dress must also be consistent.  When a plaintiff seeks to assert trade dress rights in a line of different products courts have required plaintiff to make a threshold showing that the plaintiff identifies and consistently uses the specific elements that make up its claimed trade dress. *Berg v. Symons*, *supra*, 393 F. Supp. 2d 551.   Courts regularly dismiss trade dress claims where the claimant could not identify a protectable and consistence appearance of a product line.  *Maharishi Hardy v. Abercrombie*, 292 F.Supp. 2d 535 (S.D. N.Y. 2003) (summary judgment for defendant granted when plaintiff could not prove a reasonable consistency in a line of garments, whose design varied from product to product); *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F.Supp. 2d 273, 299 (S.D.N.Y. 2002) (plaintiff "failed to establish that the overall look of its baseball and football jerseys is consistent across each of the product lines.").  In describing a claimant's burden with respect to consistency the Third Circuit said it this way, "[W]e will require this, more stringent test before the non-functionality/ distinctiveness/likelihood of confusion test if applied. A plaintiff, seeking protection for a series or line of products, must first demonstrate that the series or line has a recognizable

and consistent overall look." *Rose Art v. Swanson*, 235 F.3d 165 (3d. Cir. 2000).

Here, Plaintiff's claimed trade dress fits squarely within the definition of generic trade dress. The red and black color combination is so common in the hair tool industry that Plaintiff should not be permitted to monopolize this appearance to the exclusion of all others in the industry. Moreover, this color combination is so common in the relevant industry that it is incapable of identifying one source.[5]

Moreover, Plaintiff's use of the red and black color combination has varied wildly over time, and Plaintiff has admitted that its use of red and black differs depending on the product. *See* Exh. 7 to Seror Dec. at pgs. 37-38 [Aladanay Deposition Transcript]. Plaintiff's inconsistent use of the red and black color combination on its CHI line of products supports a finding that Plaintiff has no protectable trade dress rights.

## 2.   Plaintiff Cannot Establish Secondary Meaning in its Purported Trade Dress

A plaintiff claiming trade dress rights must also prove that the trade dress is distinctive or that it has acquired secondary meaning. Trade dress acquires secondary meaning when it creates a "mental association in buyers' minds between the alleged mark and a single source of the product." *Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999). In cases involving unregistered trade dress, the Supreme Court has ruled that a product design "is distinctive, and therefore protectable, only upon a showing of secondary meaning." *Wal-Mart*, *supra*, 529 U.S. at 216. The Supreme Court also found that colors can never be inherently distinctive, thereby always requiring secondary

---

[5] This last point is confirmed by survey results of Defendants' expert, Dr. Bruce Isaacson, whose secondary meaning survey found that less than 1.7% of the respondents associated the red and black color combination with the Plaintiff.

meaning. *Id.* at 212.  The Supreme Court imposed this more stringent test in product design cases (as opposed to product packaging cases) because the Court found that a product design is almost never inherently source-identifying.  *Id.* at 213.  Courts in the Fifth Circuit consider a combination of a number of factors in this inquiry, including: "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress."  *Pebble Beach, Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 543 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices*, 532 U.S. 23; *Shell Trademark Management*, *supra*, 765 F.Sup.2d. at 895-896.

Because establishing secondary meaning requires a link in the minds of the consuming public between the claimed trade dress and the claimant, "whether a mark or dress has acquired secondary meaning is primarily an empirical," and "survey evidence is the most direct and persuasive evidence of secondary meaning."  *Sunbeam Products, Inc. v. The West Bend Company*, 123 F.3d 246, 253-255 (5th Cir. 1997) (the "ultimate determination whether a particular mark or dress has acquired secondary meaning remains an empirical question of consumer association"); *see also*, *Sno-Wizard, supra*, 791 F.2d at 427 (describing survey evidence as the "most direct and persuasive way of establishing secondary meaning); *Brown v. Quiniou*, 744 F.Supp. 463 (S.D.N.Y. 1990) (absence of a survey "weighs heavily against plaintiff's position").   Indeed, other factors, such as the length of use, are *insufficient*, by themselves, to prove secondary meaning without an empirical study to show whether the public recognizes the mark as connoting

---

the identity of the source of the product.  *Sunbeam Products*, *supra*, 123 F.3d at 254.

        i.      <u>Plaintiff's Length and Manner of Use</u>

Plaintiff has alleged that it has been using been using the red CHI mark on a black background since 2001 when it appeared on the Original Chi Flatiron.   Plaintiff's other uses of the red and black color combination have been for a far shorter period of time – only the past few years.  The issues as to the length and manner of use, is whether the usage by the claimant has been exclusive.  *Sugar Busters, LLC v. Brennan*, 177 F.3d at 269.  The reason is clear.  If there were multiple competing products available in the marketplace, this third party usage makes it less likely that consumers would come to associate the trade dress with the claimant.  Here, one has to look no further than FHI Heat, Inc. who was using a red and black color combination at least as early as 2005. Dodo Dec., ¶¶ 6-7).   Moreover, a simple Google search for "red and black hair tools" generates numerous hair tools bearing the colors red and black – thereby eliminating (or at least drastically reducing) any potential for consumers to associate the red and black color combination with the Plaintiff. *See* Seror Dec., ¶ 8.

        ii.      <u>Volume of Sales and Plaintiff's Advertising Efforts</u>

Plaintiff has sold units that bear its purported trade dress.  Similarly, Plaintiff likely does engage in some advertising of its products that bear its purported trade dress. But sales volume and advertising dollars alone are not dispositive.  "Spending substantial amount of money does not itself cause a mark or trade dress to acquire secondary meaning." *Pebble Beach, supra*, 155 F.3d 526, 541 (5th Cir. 1998).  "The relevant question 'is not the extent of promotional efforts, but their effectiveness in altering the

---

meaning of [the dress] to the consuming public'" *Nola Spice v. Haydel Ent.*, 783 F.3d 527, 545 (5th Cir. 2015), *quoting Zatarains v. Oak Grove*, 698 F.2d 786, 795 (5th Cir. 1983).  This again speaks to the importance of survey evidence insofar as it represents the best way to determine the existence of secondary meaning.  With respect to specific advertising activities, Plaintiff has conceded that it does not advertise its products in newspapers and that the magazines that its products appear in are trade publications or internal publications directed to hair care professionals and Plaintiff's existing distributors, not directly to consumers.  *See* Exh. 7 to Seror Dec. at pgs. 115-121 [Aladanay Deposition Transcript].

> iii.    Consumer –Survey Evidence

Survey evidence is the most important factor in establishing secondary meaning. Plaintiff has failed to designate any expert to testify as to secondary meaning. Defendants, however, retained Dr. Bruce Isaacson to perform a secondary meaning survey.  *See* Declaration of Dr. Bruce Isaacson and Exh. 1 thereto.

Dr. Isaacson conducted a survey to measure the level of secondary meaning associated with the red and black color pattern on Plaintiff's CHI hair care appliances. Out of the 723 interviews of people in the relevant groups in the final survey database, only 5.9% associated a red and black color combination with one company.  (See Exh. 2 to Isaacson Dec. at p. 3:13-17 [Expert Report].   Even more tellingly, among the respondents who indicated that they did associate the red and black colors on hair care appliances with only one company or brand,  the highest level of association was *not* with Plaintiff/CHI, but with Revlon! *Id.* at 19:1-16.  2.1% of respondents associated the red

and black color combination of the product with Revlon, 1.9% with Conair and only 1.7% with CHI/Farouk.  *Ibid*.

Such a lower percentage of association of the red and black color combination with Plaintiff demonstrates a lack of secondary meaning.  Case law establishes that "figures over 50% are regarded as clearly sufficient" to provide secondary meaning. *Shell Trademark Management*, *supra*, 765 F.Supp.2d at 898.  A 30% rate is "probative of the issue" of secondary meaning, although still considered "marginal."  *Ibid*; *Spraying Systems Co. v. Delaven, Inc.*, 975 F.2d 387, 394 (7th Cir. 1992).  **But anything under 10% is insufficient proof of secondary meaning.**  *Roselux Chemical Co. v. Parsons Ammonia Co.*, 299 F.2d 855 (C.C.P.A. 1962); *Straumann Co. v. Lifecore Biomedical Inc.*, 278 F.Supp.2d 130 (D. Mass. 2003) (an identification percentage of 2.7% is not sufficient to go to the jury on the issue of secondary meaning); *Citizens Banking Corp. v. Citizens Financial Group, Inc.*, 2008 W.L. 1995104 (E.D. Mich. 2008) (8% identification with plaintiff is "insufficient to demonstrate secondary meaning).

iv.   Defendant's Intent to Copy Trade Dress

There is no evidence that Defendants intended to copy Plaintiff's trade dress.  AG Global's use of the colors red and black on its products is simply a continuation of the long standing use of these colors by FHI Heat, Inc. Dodo Dec., ¶6.

**3.   Even if Otherwise Protectable, Plaintiff Cannot Establish a Likelihood of Confusion Between its Trade Dress and Defendant's Stylus Product**

Even assuming that Plaintiff could raise a triable issue of fact that it has protectable trade dress and that the trade dress has achieved secondary meaning,

---

Defendants are still entitled to summary adjudication of this claim because Plaintiff cannot raise a triable issue that there is a likelihood of confusion as between Plaintiff's products and Defendant's Stylus product.

The second prong, infringement, occurs where "the use creates a likelihood of confusion as to the 'source, affiliation, or sponsorship'" of the alleged infringer's product. *Pebble Beach,* 155 F.3d at 543 (citing 15 U.S.C. § 1125(a)(1)(A)). "'Likelihood of confusion' means more than a mere possibility; the plaintiff must demonstrate a probability of confusion." *Xtreme Lashes v. Xtended*, 576 F.3d 221, 226 (5th Cir. 2009).

Courts "examine the following nonexhaustive 'digits of confusion' in evaluating likelihood of confusion:  (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* at 227.  "No digit is dispositive, and the digits may weigh differently from case to case, depending on the particular facts and circumstances involved." *Id.* (quotation marks omitted).

Particularly important in the likelihood of confusion analysis is survey evidence, which provides the best measure of whether consumers are likely to be confused.  Here, Plaintiff's own expert found a "likelihood of confusion" percentage too low to constitute a likelihood of confusion as a matter of law.

Specifically, despite troubling problems with his survey,[6] Plaintiff's expert,

---

[6] Defendant addresses the problems with Plaintiff's expert report in its *Daubert* motion being filed concurrently, or shortly following, the filing of this Motion.

Michael J. Barone, only found that 46 respondents to his survey believed that Plaintiff's G2 Flatiron and Defendants' Stylus originated from the same source – for a "net confusion level of 10.5%." See Exh. 4 to Seror Dec. at ¶4 [Barone Expert Report].

In likelihood of confusion surveys, percentages demonstrating confusion levels in the range of 25% - 50% are viewed a solid support for infringement.  6 *McCarthy on Trademarks* (2016) Procedure § 32:188; *see also*, *Bell v. Starbucks U.S. Brands Corp*., 389 F.Supp.2d 776 (S.D. Tex. 2005) (25% is sufficient to show a "significant" level of "actual confusion" and to support a finding of infringement); *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F.Supp.2d 888, 906-908 (S.D. Tex. 2014) (survey data showing 26.3% confusion level was support for finding a likelihood of confusion).  In the Fifth Circuit, confusion surveys that are in the range of 15% to 50% pass muster.  *See Shell Trademark Management*, *supra*, 765 F.Supp.2d at 901.

Results of a survey below 10%, however, indicate that no confusion is likely. 6 *McCarthy on Trademarks*, *supra*, at § 32:189; *1-800 Contacts v. Lens.com,* 722 F.3d 1229, 1248-9 (10th Cir. 2013) (7.4% too low to support an inference of likely confusion).

Granted, survey evidence is just one of eight digits that the courts consider in making finding on trademark infringement.  But, as with secondary meaning, survey evidence is one of the heavier-weighted digits.  And the undisputed evidence as to the remaining digits also militates in Defendant's favor and a finding of no infringement.  Of particular note is the seventh factor –of any instances of actual confusion.  Here, Plaintiff has identified only <u>one</u> such instance – which occurred in March 2015. *See* Exh. 3 to Seror Dec. [Interrogatory Responses].  In addition to being subject to multiple layers of

hearsay, this single instance cannot be verified because Plaintiff did not bother to obtain the name of the allegedly confused consumer or any significant details as to the basis for her confusion.  *See* Exh. 9 to Seror Dec. at p. 77-102 [Feldshon Deposition Transcript]. And, it must be noted that this alleged instance of confusion occurred **after** the filing of this lawsuit, when it would seem Plaintiff would be fully aware of the need to document any instances of confusion.  More to the point, besides this one instance, neither Plaintiff nor Defendants are aware of *any* instances of actual confusion in the marketplace.  Not one misdirected call, not one product returned to the wrong company – nothing.  And, that is after the parties have been coexisting in the marketplace since at least 2010. *See* Exh. 9 to Seror Dec. at p. 102, 103-5 [Feldshon Deposition Transcript].

As a result of the foregoing, Plaintiff is unable to raise a triable issue in support of its trade dress infringement claim – thereby entitling Defendants to summary judgment.

**B.**     **AG GLOBAL IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM**

Under a breach of contract and successor liability theory, Plaintiff alternatively alleges that AG Global's use of a red and black color combination constitutes a breach of the Settlement Agreement.  Plaintiff's breach of contract claim fails for three reasons: First, AG Global is not a successor to FHI Heat, Inc.  Second, even if AG Global were a successor to FHI Heat, Inc., AG Global's use of a red and black color combination does not constitute a breach of the Settlement Agreement because such use is not an infringement.  Finally, the Settlement Agreement actually operates to *release* FHI Heat, Inc. for any trade dress infringement claim pursuant to its express terms.

1.     **AG Global is Not a Successor to FHI Heat, Inc.**

Plaintiff's breach of contract claim is premised on the erroneous belief that AG Global is a successor to FHI Heat, Inc.  AG Global is not a successor to FHI Heat – it merely purchased certain assets, previously belonging to FHI Heat, Inc., from Key Bank in April 2010.  Moreover, AG Global's purchase of assets from Key Bank expressly excluded any liabilities, including any liability that may have existed under the Settlement Agreement.  AG Global's purchase from Key Bank, coupled with AG Global's exclusion of liabilities, cuts off any potential successor liability claims. *See Allied Home v. Donovan,* 830 F.Supp. 2d 223, 233 (S.D. Tex. 2011); *Motor Components, LLC v. Devon Energy*, 338 S.W. 3d 198, 204-5 (Tex.App.- Houston [14[th] Dist.] 2011).

2.     **AG Global Has Not Infringed Plaintiff's Trade Dress Rights**

Even if, *arguendo*, Plaintiff could establish that AG Global is a successor to AG Global (which it can't) AG Global is nevertheless still entitled to summary adjudication in its favor on the breach of contract claim.  As is set forth more fully in section VI., A., herein, AG Global has not infringed on Plaintiff's trade dress.  As a result, Plaintiff's inability to raise a triable issue of fact as to its trade dress infringement claim is likewise fatal to Plaintiff's breach of contract claim.

3.     **The Settlement Agreement Actually Operates to Release AG Global From the Alleged Trade Dress Infringement**

The Settlement Agreement included a broad release of FHI Heat, Inc. for all claims Plaintiff "has or has had against FHI Heat" as of the date of the Settlement Agreement, and upon payment owed under the agreement, Plaintiff "fully and finally"

---

released and dismissed with prejudice "all claims asserted *or related claims which could have been asserted* in Civil Action No. 4:07-cv-02333, in the United States District Court for the Southern District of Texas, Houston Division, against FHI Heat, Inc." And while the *Farouk Systems v. FHI Heat, Inc.* alleged trademark infringement claims related to Plaintiff CHI trademark, **the complaint in that action attaches photos of FHI Heat's products, including many products that are bear a red and black color combination**. *See* Exh. A to RJN. As a result, Plaintiff was aware as of the filing of that lawsuit that FHI Heat, Inc. was selling products featuring a red and black color combination and that it could have asserted a claim based thereon for trade dress infringement. As a result, the Settlement Agreement operates to fully release FHI Heat, Inc. for any claims of trade dress infringement that existed as of the execution of the Settlement Agreement, including claims for use of red and black on FHI Heat, Inc.'s products.

If AG Global is FHI Heat, Inc.'s successor (which, by reason of Plaintiff's own allegations, it is estopped from denying), the effect of the Settlement Agreement is to release AG Global for any alleged trade dress infringement that Plaintiff would have had against FHI Heat, Inc. at the time of the settlement.

## C. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S COPYRIGHT CLAIMS

A key element in any copyright claim is originality. The Supreme Court has stressed that 'the sine qua non of copyright is originality. To qualify for copyright protection, a work must be original to the author.' *Feist Publications v. Rural Tel. Service*, 499 U.S. 340, 345 (1991).

Plaintiff has admitted that the two social media posts which are the subject of its infringement claims are not original to Plaintiff and were largely copied from third party websites.  The absence of any original contributions by Plaintiff precludes it having any rights in the works at issue.  With respect to the photograph of Gulamani, the copyright rights belong to the photographer who took the photo - Mr. Berisha.  Plaintiff has not, and cannot, show that it ever acquired any rights in the photograph– a defect which is fatal to this claim.

Moreover, Defendants are also entitled to summary judgment because Plaintiff is unable to state a claim for damages.  Plaintiff has conceded that it is seeking only an award of statutory damages and injunction relief on its copyright claims. *See* Exh. 8 to Seror Dec. at p. 82-3 [Allison Deposition Transcript].  Plaintiff is precluded from recovery of any statutory damages under the Copyright Act based on when Plaintiff filed its copyright registrations: April 21, 2015, which was after the alleged infringement commenced, and after the original Complaint was filed (in February of 2015).  17 U.S.C. §§ 412 and 504.  Therefore, statutory damages and attorney's fees are unavailable.  Moreover, the allegedly infringing images have already been removed or replaced, rendering Plaintiff's prayer for injunctive relief moot.

### 1.    Subject Image No. 1

To assess the validity of Plaintiff's claim and the scope of its copyright protection in Subject Image No. 1, the image can be broken down into its two component parts: (1) the unaccredited quotation, "A true artist wears it, walks it, breathes it;" and (2) the imagery included in the image -- the two brushes and scissors featured in the horizontal

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

23

bar found at the top of the image with a black hair background underneath the quote.

Insofar as Plaintiff does not (and cannot) claim any copyright rights in the quotation, or any exclusive right in the quotation, and Plaintiff has admitted that the images included in Subject Image 1 were taken as a whole from Shutterstock, Plaintiff is unable to establish any original copyrightable contributions to Subject Image No. 1. As none of the components of Subject Image 1 are original to Plaintiff, there is nothing to be covered by Plaintiff's registration. In the absence of any rights in this image Plaintiff cannot maintain an action for infringement.

### 2.    <u>Subject Image No. 2</u>

As was the case with the previous image, this image can be broken down into two parts: (1) the quotation of Pablo Picasso; and (2) the additional imagery of the scissors cutting hair (in the lower right corner of the image), and the verbiage "Snips of Wisdom" featured in the upper right portion of the image.

Following the exclusion of the quoted text from Plaintiff's claim of copyright, the only portion of this image original to Plaintiff (and which is the subject of Plaintiff's copyright registration) is the imagery of the hair and scissors found on the bottom right of the image and the use of the phrase "Snips of Wisdom" in the upper right portion of the image. Plaintiff's claim of copyright can only extend to its original work, and thus Plaintiff's infringement claim is necessarily limited to these two elements. A comparison of Plaintiff's claimed work and AG Global's work clearly demonstrates that AG Global's image does not include Plaintiff's original contributions, or a substantial similar variation thereof. As a result, AG Global is entitled to summary adjudication in its favor on this

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

24

copyright infringement claim.

### 3.    Gulamani Photograph

Plaintiff has demonstrated that it has no rights in the Gulamani Photograph, which precludes any claim for infringement.   The rights in the Gulamani Photograph belonged to Mr. Berisha, the photographer who took the photo.  These rights would have remained with him in the absence of any transfer or assignment of his rights therein.   Plaintiff has provided no evidence that Mr. Barisha transferred any rights in the Gulamani Photograph to Plaintiff.  The lack of any agreement or assignment of the rights in the Gulamani Photo is itself dispositive given that the transfer or assignment of any copyright rights must be memorialized by a written assignment.  17 U.S.C. § 204(a).

Unlike Plaintiff, who cannot demonstrate rights in the Gulamani Photograph, Gulamani *can* establish rights flowing from Mr. Berisha's transmittal of the Gulamani Photograph to Gulamani and the grant of a license to use it.  Even if Plaintiff had received a subsequent assignment of Mr. Berisha's rights in the Gulamani Photo (which Plaintiff cannot establish), such an assignment would nevertheless be subject to Mr. Berisha's prior license to Gulamani.  The license to Gulamani thus completely forecloses Plaintiff's claims to the Gulamani Photo, and entitles Gulamani to summary adjudication of this claim in his favor.

## VII.   CONCLUSION

The claims alleged by Plaintiff in this action are wholly without merit.  For the reasons set forth herein, and pursuant to Federal Rule of Civil Procedure 56, Defendants request the Court to grant their motion for summary judgment in its entirety.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BN 20154927V11

DATED:  February 17, 2016

**BUCHALTER NEMER**
A Professional Corporation

**By:** _____/s/_____
   ROBERT S. ADDISON, JR.
   State Bar No. 00793232
   S.D. Texas Bar No. 2589959
   1000 Wilshire Boulevard, Suite 1500
   Los Angeles, CA  90017-2457
   Telephone: (213) 891-0700
   Fax: (213) 896-0400
   Email:  raddison@buchalter.com

   Attorneys for Defendants
   AG GLOBAL PRODUCTS, LLC and
   SHAUKY GULAMANI

**OF COUNSEL**

MARK J. LEVINE
State Bar No. 00791102
S.D. Bar No. 20021
Weycer, Kaplan, Pulaski & Zuber, A P.C.
11 Greenway Plaza, Suite 1400
Houston, Texas 77046
Telephone: (713) 961-9045
Fax: (713) 961-5341
Email: mlevine@wkpz.com

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## <u>CERTIFICATE OF SERVICE</u>

  I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record electronically through the Court's CM/ECF Filing system and by overnight mail delivery on this 17th day of February, 2016.


              */s/ Robert S Addison, Jr.*
              Robert S. Addison, Jr.