United States District Court
Southern District of Texas
**ENTERED**
April 05, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FAROUK SYSTEMS, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-0465 |
| | § | |
| AG GLOBAL PRODUCTS, LLC d/b/a | § | |
| FHI HEAT LLC, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment [Doc. # 43]

filed by Defendants AG Global Products, LLC d/b/a FHI Heat LLC ("AG") and

Shauky Gulamani, to which Plaintiff Farouk Systems Inc. ("Farouk") filed a Response

[Doc. # 47], and Defendants filed a Reply [Doc. # 49].  Having carefully reviewed the

full record and applicable legal authorities, the Court **grants** the Motion for Summary

Judgment

## I.   BACKGROUND

Farouk and AG both manufacture and sell hair care products.  Farouk Shami is

the founder of Farouk.  Gulamani was the President of Farouk until 2010, when he

resigned and became President and Chief Executive Officer of AG.

Farouk markets many of its hair care appliances under the trademark CHI.

Farouk uses various red and black color combinations on many of its CHI products.

AG sells a heated hair brush under the name "Stylus" that is black with a red oval along the edge of the handle.  Farouk alleges that AG's use of the red and black color scheme constitutes trade dress infringement.

Farouk alleges also that AG has posted images on the Internet that are virtually identical to images for which Farouk applied for copyright registration.  Farouk alleges also that Gulamani posted on the Internet a photograph of himself in which Farouk has a copyright interest.

In July 2007, Farouk filed a trademark infringement lawsuit against FHI Heat, Inc.[1] (the "2007 Lawsuit").  That lawsuit was settled pursuant to a written Settlement Agreement.[2]  Plaintiff alleges that AG, as a successor to FHI Heat, Inc., is bound by and has breached the Settlement Agreement.

Plaintiff in its First Amended Complaint [Doc. # 12] asserts causes of action for federal copyright infringement against AG and Gulamani, federal trade dress infringement against AG and Gulamani, and breach of the Settlement Agreement against AG only.  Following the close of discovery, Defendants moved for summary judgment on each of the claims in the First Amended Complaint.  The Motion has been fully briefed and is now ripe for decision.

---

[1]     *Farouk Sys., Inc. v. FHI Heat, Inc.*, Civil Action No. H-07-2333 (S.D. Tex.).

[2]     The Settlement Agreement is filed under seal as Docket Entry # 26 in this current lawsuit.

## II.    STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  The moving party, however, "need not negate the elements of the nonmovant's case."  *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).  The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."

*Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic

argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id*. (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

## III.   ANALYSIS

### A.   Copyright Infringement Claims

In the copyright infringement claims, Plaintiff alleges that AG copied two images from Farouk's Facebook page and Gulamani posted a photograph of himself on his personal LinkedIn home page. The two essential elements of a copyright infringement claim are (1) the plaintiff owns a valid copyright and (2) the defendant copied constituent elements of the copyrighted material. *See Guzman v. Hacienda Records and Recording Studio, Inc.*, 808 F.3d 1031, 1037 (5th Cir. 2015); *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003).

To qualify for a copyright, the work must be original. *See Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). "Original, as the term is used in copyright, means only that the work was independently created by the author (as

opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.*

"A 'compilation' is a work formed by the collection and assembling of preexisting materials . . . in such a way that the resulting work as a whole constitutes an original work of authorship."   17 U.S.C. § 101.   "The copyright in a compilation . . . extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material."  17 U.S.C. § 103(b).

In this case, Farouk admits that the two images on its Facebook page were created by copying a quotation and images from Shutterstock, a provider of royalty-free images.  In Image No. 1, the Farouk employee combined an unaccredited quotation with images of a comb, scissors, and brush from Shutterstock.  In Image No. 2, the Farouk employee combined a quote from Picasso with a banner reading "Snips of Wisdom" and the image of a pair of scissors.  Even though the images may be copyrightable as compilations, the copyright extends only to the original material contributed by the Farouk employee, not to the preexisting material borrowed from other sources.  *See* 17 U.S.C. § 103(b).  Each of the elements of Image No. 1 was copied from another source.  Additionally, although Defendant's version of Image No. 1 is extremely similar to Plaintiff's, it is obvious that it is not a copy.  In Image No.

2, the original elements added by a Farouk employee are the "Snips of Wisdom" and the image of the scissors.  Neither of these elements is included in the allegedly infringing image on AG's Facebook page.  As a result, AG is entitled to summary judgment on the copyright infringement claims regarding Images No. 1 and No. 2.

Plaintiff alleges also that a photograph of Gulamani on his personal LinkedIn profile page constitutes copyright infringement.  There is no evidence that, at the time the photograph was presented on Gulamani's LinkedIn page, Farouk possessed a valid copyright for the photograph.  It is undisputed that the photograph was taken of Gulamani by a third-party photographer.  There is no evidence that the photographer transferred the rights to the photograph to Farouk in a written assignment as required by 17 U.S.C. § 204(a).  Farouk argues that the photograph was taken while Gulamani was employed by Farouk, but the "work for hire" provision of the Copyright Act provides copyright protection under certain circumstances to an employer where the *person creating the work* is an employee.  *See* 17 U.S.C. § 201(b).  There is no similar provision where the *subject* of the work, not the creator of the work, is the employee. Absent evidence that Farouk had a valid copyright in the photograph, Gulamani is entitled to summary judgment on the copyright infringement claim.

As an additional, yet equal, basis for summary judgment in favor of Defendants on the copyright infringement claims, Plaintiff has conceded that it is seeking only an

award of statutory damages and injunctive relief on its copyright claims. It is undisputed that Farouk did not attempt to register its copyrights in the two images and the photograph until April 21, 2015, after the alleged infringement and, indeed, after this lawsuit was filed in February 2015. The timing of the registration applications renders any claim for statutory damages and attorneys' fees unavailable. *See* 17 U.S.C. § 412. Defendants have represented that they are no longer displaying the challenged images and photograph and, therefore, Farouk's claim for injunctive relief is moot. On this basis also, the Court grants summary judgment in favor of Defendants on Plaintiff's copyright claims.

### B.    Trade Dress Infringement Claim

Farouk alleges that AG's Stylus heated hair brush infringes the trade dress of CHI products. Defendants seek summary judgment on this claim, arguing that Farouk's claimed trade dress is generic and has been used too inconsistently to constitute protectable trade dress. Defendants argue also that the alleged trade dress is not protectable because it is a color combination that has not acquired secondary meaning.[3]

---

[3]    Defendants argue also that Plaintiff has failed to demonstrate a likelihood of confusion between the alleged trade dress and the Stylus brush. Because Defendants are entitled to summary judgment on each of their first two arguments, the Court need not address this third argument. Because the Court's grant of summary judgment in Defendants' favor is not based on whether Farouk has presented evidence of a

(continued...)

"Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (citations omitted). "The purpose of trade dress protection, like trademark protection, is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing products." *Id.* (citations omitted).

**_Generic Trade Dress and Inconsistent Use._**– Farouk alleges that its use of the red and black color combination on its CHI line of hair styling appliances is protectable trade dress. Where, as here, a plaintiff claims to have a protectable trade dress "based on a combination of elements in a line of different products, courts have required a threshold showing that the plaintiff identifies **_and consistently uses_** the specific elements that make up the asserted trade dress." *Berg v. Symons*, 393 F. Supp. 2d 525, 551 (S.D. Tex. 2005) (Rosenthal, J.) (emphasis added). The alleged trade dress must have a "recognizable and consistent overall look." *Id.* (quoting *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172 (3d Cir. 2000)).

---

[3]       (...continued)
          likelihood of confusion, Defendants' Motion to Exclude [Doc. # 44], seeking to
          exclude the report and testimony of Plaintiff's expert on the likelihood of confusion,
          is denied as moot.

In this case, Farouk seeks trade dress protection for the red and black color combination used in its CHI product line.[4]   The uncontested record establishes, however, that Farouk does not use the red and black color combination consistently in the CHI line.  The CHI flat irons are primarily black with golden-colored heating plates and the word CHI in red.  *See* Photographs of CHI products, Exh. C to Response.  The CHI curling irons are different styles; one style is primarily red and gold with the word CHI in black, and the cordless curling iron is primarily black and gold with the word CHI in red.  *See id.*  One style of Farouk's styling brushes is primarily a golden color with red ends and a black and white handle, while others have a red and black base with a black and white handle.  *See id.*  Other styling brushes are black with a black and white handle.[5]  *See id.*  Because Farouk does not use the red and black color combination in any consistent manner within the CHI line of hair care appliances, the red and black combination does not enjoy protection as trade dress.  Defendants are entitled to summary judgment on the trade dress infringement claim.

---

[4]    The Court notes that other lines of CHI products do not include the red and black color combination.  For example, the CHI Miss Universe line is pink and Farouk's "Kardashian Beauty" appliances are black and bronze.  *See* Photographs, Exh. C to Response.

[5]    The allegedly infringing Stylus heated brush is almost exclusively black with a red oval around the edge of the handle and the words "FHI Heat" in white.  *See* Declaration of Jason Dodo, Exh. A to Motion, ¶ 3.

***Secondary Meaning.***– Color, even if protectable, can be protected only upon a showing of secondary meaning.  *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 206 (2000) (citing *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 152, 162-63 (1995)); *see also Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 475 (5th Cir. 2008).  "Secondary meaning occurs when, in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself."  *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 445 (5th Cir. 2015) (quoting  *Bd. of Supervisors for La. State Univ.*, 550 F.3d at 475).  "A mark has acquired secondary meaning when it has come through use to be uniquely associated with a specific source."  *Id.*

Courts in the Fifth Circuit use a seven-factor test to determine whether alleged trade dress has acquired secondary meaning:  (1) length and manner of use of the trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.  *Id.* Consideration of these factors, as discussed more fully below, establishes that Farouk has failed to present evidence that raises a genuine issue of material fact regarding

whether its use of various red and black color combinations on its CHI products has acquired secondary meaning.

With reference to the first factor, Farouk has presented evidence that it began using the red and black color combination in 2000.  FHI Heat, Inc. began using a red and black color combination by 2005.  As explained above, however, Farouk's use of the red and black color combination since 2000 has been inconsistent.  In its Response, Farouk states that an aspect of its alleged trade dress is the use of the word "CHI" in a vibrant red on a black background.  *See* Response, p. 20.  The uncontroverted record demonstrates, however, that some of the CHI hair care appliances, specifically one version of the curling iron, has the word "CHI" in black letters.  *See* Photographs, Exh. C to Response.

Farouk has presented evidence that it had extensive sales of its products.  Farouk's witness on the issue, however, has admitted that the sales volume includes products that do not include the red and black color combination but are sold in packages with red and black.  *See* Deposition of Radhasaran Patel, Exh. A to Declaration of Matthew L. Seror, pp. 69-70.

Farouk conceded that it has no evidence of its actual advertising expenses for the products containing the alleged trade dress combination of red and black.  Instead, Farouk's evidence regarding its advertising expenses for the products using the

alleged trade dress was calculated as a percentage of total advertising expenses.  The percentage used, however, was based on the sales volume that Patel conceded included products that were not red and black.  Moreover, the relevant issue is not simply the extent of advertising, but its "effectiveness in altering the meaning" of the asserted trade dress to the consuming public.  *See Zatarains, Inc. v. Oak Grove Smokehouse*, 698 F.2d 786, 795 (5th Cir. 1983).

The fourth factor is the use of the trade dress in magazines and newspapers.  Plaintiff has presented no evidence that it advertises its products in newspapers or non-trade magazines.  In support of this factor, Farouk instead has presented evidence that it and its founder have received significant press coverage, including Mr. Shami's appearance on "The Apprentice" and his association with the Miss Universe pageant.  There is no evidence, however, that any of this press coverage featured the asserted trade dress.  Indeed, the uncontested evidence in the record demonstrates that the Farouk line of hair styling tools under the Miss Universe brand are pink and do not include any red and black color combination.  *See* Photographs, Exh. C to Response.

The fifth factor, often considered the most important factor, is consumer-survey evidence.  *See Sunbeam Prods., Inc. v. The West Bend Co.*, 123 F.3d 246, 253 (5th Cir. 1997).  Plaintiff admits that it has not offered any consumer-survey evidence, and provides no explanation for its failure to do so.  Defendants, on the other hand, have

presented the unchallenged results of a consumer survey conducted by Dr. Bruce

Isaacson.[6]  Dr. Isaacson has a Masters in Business Administration and a Doctor of

Business Administration in Marketing, both from Harvard Business School.  *See*

Declaration of Bruce Isaacson, Exh. B to Motion for Summary Judgment.

Dr. Issacson's Expert Report is attached as Exhibit 2 to his Declaration.  Only 5.9%

of the 723 individuals interviewed in the survey associated a red and black color

combination with any one company.  Of those who associated the red and black color

combination with a single company, most associated the color combination with

Revlon or some other company.  Of the four options – CHI/Farouk, Conair, Revlon,

and "Other" – CHI/Farouk was the company identified as the source of products with

a red and black color combination by only 1.7% of respondents.  *See* Isaacson Report,

p. 19.  Generally, consumer-survey evidence of a percentage of association below

10% is insufficient to demonstrate secondary meaning.  *See, e.g., Straumann Co. v.

Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130 (D. Mass. 2003) (2.7%); *Citizens

Banking Corp. v. Citizens Fin. Group, Inc.*, 2008 WL 1995104 (E.D. Mich. 2008)

(8%).

---

[6]       The Court is not required to consider in a vacuum Farouk's evidence on the issue of
secondary meaning.  *See Test Masters*, 799 F.3d at 447.  Instead, the Court may
consider all evidence presented by both parties when determining whether Farouk has
raised a genuine issue of material fact regarding whether the red and black color
combination has acquired secondary meaning, denoting to consumers that the
products come from Farouk.  *See id.*

Plaintiff's evidence regarding the final factor – Defendants' intent to copy Farouk's trade dress – is that Gulamani changed the color of the Stylus from black and silver as suggested by the manufacturer to black and red.  Defendants have presented uncontested evidence, however, that FHI Heat, Inc. had been using the red and black color combination since at least 2005, years before AG purchased FHI Heat, Inc.'s assets and years before Gulamani became associated with AG.  Gulamani testified under oath in his deposition that he changed the color of the Stylus to continue the same color combination used on other FHI products.  Farouk has presented no evidence to refute Gulamani's sworn testimony, offering instead only suspicion and conjecture.

The Court has carefully considered the evidence presented by Plaintiff and Defendants on the secondary meaning factors.  The Court concludes that Farouk has failed to raise a genuine issue of material fact regarding whether its asserted trade dress – some combination of the colors red and black – is recognized by the consuming public as an indication that a hair stying tool using that color combination is a Farouk product.  On this basis also, Defendants are entitled to summary judgment on the trade dress infringement claim.

**C.**      **Breach of Contract Claim**

Plaintiff in the First Amended Complaint alleges that AG breached Sections 2.3 and 2.11 of the Settlement Agreement.  AG, the only Defendant named in the breach of contract claim, seeks summary judgment on the claim because it is not a party to the Settlement Agreement between Farouk Systems, Inc. and FHI Heat, Inc.

The Settlement Agreement in the 2007 Lawsuit precludes FHI Heat, Inc. from marketing its products by comparing them to Farouk's products (Section 2.3).  The Settlement Agreement also requires FHI Heat, Inc. to educate its employees and independent contractors that its products have no relationship or affiliation with Farouk's products (Section 2.11).  AG argues that it is not bound by this Settlement Agreement between Farouk and FHI Heat, Inc.  Farouk argues that AG is a successor to FHI Heat, Inc. and has successor liability under Texas law.

"Texas strongly embraces the general rule that a successor entity in an asset transfer is not liable for the grantor's liabilities."  *In re 1701 Commerce, LLC*, 511 B.R. 812, 823 (N.D. Tex. 2014) (citing *E–Quest Mgmt. v. Shaw*, 433 S.W.3d 18, 22-24, (Tex. App. – Houston [1st Dist.] 2013, *pet. denied*); *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139 (Tex. App. – Houston [1st Dist.] 2000, *pet. denied*)). "The limited exceptions to the general rule are provided in section 10.254 of the Texas Business Organizations Code, which states:

> (a)  A disposition of all or part of the property of a domestic entity, regardless of whether the disposition requires the approval of the

entity's owners or members, is not a merger or conversion for any purpose.

(b)     Except as otherwise expressly provided by statute, a person acquiring property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person.

*Id.* (quoting TEX. BUS. ORG. CODE § 10.254).  As a result, the only means by which successor liability may be imposed under Texas law against a transferee of assets are "(1) express assumption or (2) liability conferred by another statute."  *Id.* at 824 (citing *Koll Real Estate Grp., Inc. v. Howard*, 130 S.W.3d 308, 315 n.11 (Tex. App. – Houston [14th Dist.] 2004, *no pet.*).

In this case, it is undisputed that Key Bank National Association ("Key Bank") was a secured creditor of FHI Heat, Inc.  In April 2010, FHI Heat, Inc. surrendered certain collateral to Key Bank.  Also in April 2010, AG purchased those assets, including the FHI Heat name and the goodwill associated with it.  *See* Declaration of Jason Dodo, Exh. A to Defendants' Motion for Summary Judgment [Doc. # 43-1], ¶ 5.  AG's purchase of the assets from Key Bank expressly excluded any liabilities.  *See* Purchase Agreement, Exh. L. to Plaintiff's Response, ¶ 1.6.

The uncontroverted evidence in the record establishes that AG did not expressly assume FHI Heat, Inc.'s liabilities and neither party has identified another statute that confers successor liability on a company that purchases assets from a secured creditor

to whom the assets have been surrendered.  AG, therefore, is not subject to successor liability under the Settlement Agreement and is entitled to summary judgment on the breach of contract claim.

The Court notes that some judges in the Southern District of Texas have assumed that successor liability can be imposed under Texas law when the acquisition of the predecessor's assets was fraudulent and intended to avoid the predecessor's debts or liabilities.  *See, e.g., Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223 (S.D. Tex. 2011) (Harmon, J.); *U.S. v. Americus Mortg. Corp.*, 2013 WL 4829284 (S.D. Tex. Sept. 10, 2013) (Hanks, M.J.); *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.*, 2010 WL 1417900 (S.D. Tex. Apr. 7, 2010) (Werlein, J.).  The decision in each of these cases is based on *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127 (Tex. App. – Houston [1st Dist. 2000).  In *Lockheed Martin*, the Texas court discussed the majority rule under the Third Restatement of Torts for Products Liability, which allows for successor liability in any of four specific situations: (1) there is express assumption of liability; (2) the acquisition results from a fraudulent conveyance to avoid liability; (3) the acquisition constitutes a consolidation or merger with the predecessor; and (4) the acquisition results in the successor becoming a "continuation" of the predecessor.  *See id.* at 134.  The Texas Court of Appeals then noted that the rule in Texas, unlike the majority Restatement rule, allows successor liability ***only***

when expressly assumed or another statute provides to the contrary. *See id.* at 134-35. In a footnote to that sentence, the Texas Court of Appeals notes that the Texas statute eliminated the "de facto merger" exception, the third Restatement exception; and that Texas case law had rejected the "mere continuation" theory, the fourth Restatement exception. *See id.* at 135, n.6. Because there was no mention of the "fraudulent conveyance" exception in footnote 6, some judges appear to have assumed that Texas had not rejected that exception from the Restatement. That assumption is not, however, supported by the actual holding in *Lockheed Martin* or by the language of the Texas statute.

Even were this Court to conclude that the "fraudulent conveyance" is a valid basis for imposing successor liability under Texas law, there is no evidence in the record that the purchase by AG of FHI Heat, Inc.'s assets from Key Bank (the secured creditor entitled to the assets) was a fraudulent conveyance intended to avoid FHI Heat, Inc.'s debts and liabilities. Indeed, there is no evidence that even suggests that Key Bank's conveyance of FHI Heat, Inc.'s assets to AG was fraudulent in any way. For this reason also, AG is entitled to summary judgment on the breach of contract claim.

## IV.    CONCLUSION AND ORDER

Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding at least one essential element of each of its claims.  As a result, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 43] is **GRANTED**.  It is further

**ORDERED** that Defendants' Motion to Exclude Expert Report and Testimony of Michael J. Barone, Plaintiff's expert on likelihood of confusion [Doc. # 44] is **DENIED AS MOOT**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **5**[th] day of **April, 2016.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE